In re LUCRE, INC., Debtor.

No. HG 05–21732.

United States Bankruptcy Court,
W.D. Michigan.

Nov. 9, 2005.

Robert F. Wardrop, II, Esq., Grand Rapids, MI, for Debtor.

Thomas P. Sarb, Esq., Grand Rapids, MI, for U.S. Signal Company, LLC.

## OPINION RE: DEBTOR'S NOVEMBER 3, 2005 EMERGENCY MOTION

JEFFREY R. HUGHES, Bankruptcy Judge.

Lucre, Inc. ("Debtor") filed a motion on November 3, 2005 entitled "Emergency Motion of Debtor Pursuant to 11 U.S.C. § 366 For Authority to Provide Adequate Assurance of Future Performance to Utility Providers." I granted Debtor's separate request to hear that motion on an expedited basis. Consequently, Debtor's motion was heard on November 8, 2005.

Seven different entities are the objects of Debtor's requested relief. They are:

Michigan Bell, d/b/a SBC ("SBC")

Verizon, Inc. ("Verizon")

U.S. Signal

IXC Direct ("IXC")

Opex Communications ("Opex")

Sprint

Consumers Energy—GR ("Consumers Energy")

Only U.S. Signal appeared at the hearing.[1]

Debtor withdrew its motion with respect to SBC and Verizon. Debtor and U.S. Signal adjourned the motion regarding U.S. Signal to November 17, 2005. However Debtor proceeded on its motion with respect to Consumers Energy, Sprint, IXC and Opex.

I made a ruling from the bench at the conclusion of the November 8, 2005 hearing. The purpose of this written opinion is to supplement that ruling.

### Factual Background [2]

Debtor is in the business of providing telecommunications services to various customers. Its primary business territory

---

1. I have accepted for purposes of this opinion and accompanying order Debtor's representation that each of the subject entities was properly served. The parties who did not appear reserve the right to contest the adequacy of service.

2. Two employees appeared with Debtor's attorney at the November 8, 2005 hearing. However, neither testified. I instead accepted the factual presentation made by Debtor's attorney with his representation that the two employees would offer testimony consistent with those representations if they were called to testify.

is the western half of Michigan's lower peninsula.

Debtor purchases energy from Consumers Energy and long distance service from Sprint. Debtor is the end user of both of those services. Debtor also purchases telecommunication services from IXC and Opex. However, Debtor itself does not use these services. Rather, Debtor utilizes IXC's and Opex's services in connection with Debtor's provision of telecommunication services to its own customers.

Debtor utilizes the telecommunication services provided by SBC, Verizon and U.S. Signal in a similar fashion. Indeed, Debtor reciprocates in at least some of those arrangements by providing telecommunication services in return. A document commonly referred to as an interconnection agreement memorializes the arrangement to provide services between Debtor and this type of telecommunication provider.

Debtor filed its petition for relief under Chapter 11 on October 21, 2005. Consumers Energy, Sprint and IXC had notified Debtor pre-petition that they each intended to discontinue services. Opex had given Debtor a similar notice post-petition. However, none of these entities had actually discontinued providing services to Debtor as of the November 8, 2005 hearing.

Debtor contacted Consumers Energy, Sprint, IXC and Opex shortly after it commenced its bankruptcy proceeding to arrange for the continuation of services post-petition. It offered as "assurance of payment"[3] the following cash deposits:

| | |
|---|---|
| Consumers Energy | $ 300 |
| Sprint | $ 100 |
| IXC | $1,000 |
| Opex | $1,000 |

Debtor also represented that whatever services those entities provided post-petition would be entitled to priority as a Section 503(b)(1) administrative expense.

Debtor indicated at the hearing that only Opex had responded to its proposal. Opex did not accept Debtor's proposal. Rather, Opex countered by demanding a deposit of $4,500.

### Discussion

11 U.S.C. § 366 addresses the circumstances under which a utility may alter post-petition services to a trustee in a bankruptcy proceeding. Subsection (a) automatically enjoins a utility from altering, refusing or discontinuing such post-petition services "solely on the basis of the commencement of a case … or that a debt owed by the debtor … for service rendered before the order for relief was not paid when due."

However, subsection (b) limits the automatic aspect of this injunction to only 20 days. The utility may thereafter alter, refuse or discontinue the post-petition service to be provided the trustee unless the trustee furnishes "adequate assurance of payment, in the form of a deposit or other security, for service after such date."

This was the law prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). However, BAPCPA amended Section 366 by adding a new subsection (c). Subsection (c) applies to all Chapter 11 cases filed after October 16, 2005. Consequently, subsection (c) applies in the instant case.

Subsection (c) is similar to subsection (b) in the sense that it too establishes requirements for continuing the automatic injunction imposed by subsection (a). However, subsection (c)'s requirements are more stringent. First, subsection (c) limits what the Chapter 11 trustee or debtor in posses-

**3.** 11 U.S.C. § 363

sion may offer as "adequate assurance of payment." 11 U.S.C. § 366(c)(1). Second, and more important, subsection (c) permits the automatic injunction of subsection (a) to continue beyond 30 days only if the adequate assurance offered by the Chapter 11 trustee or debtor in possession is not satisfactory to the utility. 11 U.S.C. § 366(c)(2).

 Debtor requests that I continue the subsection (a) injunction with respect to Consumers Energy, Sprint and IXC notwithstanding subsection (c) because of their failure to respond to its offers of adequate assurance. However, subsection (c) does not give me that discretion, for it clearly requires as a condition to continuing the injunction either the utility's acceptance of the adequate assurance offered by the Chapter 11 trustee or debtor in possession or the Chapter 11 trustee's or debtor in possession's acceptance of the adequate assurance offered by the utility. Granted, subsection (c)(3) does give the trustee or debtor in possession the right to have the adequate assurance payment modified by the court. However, that right arises only after the adequate assurance payment has been agreed upon by the parties. In other words, the trustee or debtor in possession has no recourse to modify the adequate assurance payment the utility is demanding until the trustee or debtor in possession actually accepts what the utility proposes.

Therefore, Debtor's request with respect to Consumers Energy and Sprint is denied. Both Consumers Energy and Sprint are clearly utilities entitled to the protections afforded by new subsection (c). Denial of Debtor's request is without prejudice to whatever right Debtor may later have to enjoin either of those entities from exercising its rights under subsection (c). At

first blush, such an effort would appear to a be a fool's errand. However, the Sixth Circuit recently concluded that "good faith" may be implied in what would otherwise appear to be an absolute right to convert a bankruptcy case from Chapter 7 to Chapter 13 pursuant to 11 U.S.C. § 706(a). *Copper v. Copper, (In re Copper)*, 426 F.3d. 810 (6th Cir.2005).[4] Consequently, a similar good faith requirement might also exist with respect to a utility's exercise of its rights under subsection (c). That is, subsection (c) could be read to require a utility to bargain in good faith with the trustee or debtor in possession before electing to discontinue service thereunder.

IXC and Opex are not so easily resolved. There is a question as to whether the services provided by IXC or Opex are even subject to the provisions of Section 366. Unlike Consumers Energy and Sprint, neither IXC nor Opex is providing a service to Debtor that Debtor itself consumes. Rather, Debtor uses the telecommunication services provided by IXC and Opex to provide its own utility services to its customers. Consequently, it is appropriate to ask whether the corresponding duties and rights under an interconnection agreement between, for example, Debtor and IXC is better analyzed under Section 365 then under Section 366. However, that issue is moot in this instance because it is Debtor who has taken the initiative of seeking relief under Section 366.

 Moreover, it does not follow that IXC and Opex are entitled to the greater rights afforded by subsection (c) even if their arrangements with Debtor are otherwise subject to Section 366. It is important to note that subsection (a) and (b) of Section 366 refer generally to the discontinuation of any "service" offered by the utility whereas subsection (c) refers specif-

4. Decided October 18, 2005. Case No. 04– 6279.

ically to only a "utility service" offered by the utility. Perhaps this difference is inconsequential. However, I consider that it is not. It is common now for utilities to offer services beyond simply those used by consumers. Indeed, this transformation is at least in part the result of legislation enacted by Congress to make utilities more competitive. Consequently, it is fair to assume that the Congress recognized the difference in services provided by utilities when it recently amended Section 366 and that Congress therefore purposely excluded services provided between utilities as in the case with IXC and Opex from the more stringent requirements of subsection (c). In other words, "utility service" in subsection (c) means only traditional services that the debtor in possession itself consumes in contrast to other services and rights provided by the utility, such as interconnection agreement services.[5]

Therefore, I am not denying Debtor's request to continue the subsection (a) injunction with respect to IXC and Opex. On the other hand, I am not granting Debtor's request either. Debtor may furnish to IXC and Opex the adequate assurance of payment as proposed pursuant to subsection (b). IXC and Opex in turn may request that the court modify what Debtor intends to furnish. I reach this result because Debtor is entitled to an immediate interpretation of Section 366 for purposes of operating in this Chapter 11 proceeding and neither IXC nor Opex has chosen to defend at this juncture. However, if the occasion arises at some later date in this proceeding to further consider my interpretation of subsection (c), then IXC and Opex reserve the right to advocate a different interpretation at that time.

Debtor has also requested that its offer of adequate assurance to Sprint and Consumers Energy be deemed satisfactory for purposes of the 10 day "gap" between the 20 days of automatic protection afforded by subsection (b) and the 30 days of automatic protection afforded by subsection (c). Subsections (b) and (c) are not mutually exclusive. That is, a utility that is permitted to discontinue "utility services" under subsection (c) may also choose to discontinue "utility services" under subsection (b) if the debtor does not offer adequate assurance of payment as required by subsection (b). Granted, the protection afforded the debtor under subsection (b) is only an additional 10 days. However in the instant case, it is 10 days of protection that Debtor desires. As with IXC and Opex, I am not granting Debtor's request with respect to what it has offered Sprint and Consumers Energy as adequate assurance payments under subsection (b). Debtor's offer stands on its own and Sprint and Consumers Energy are left to seeking modification of what Debtor is furnishing as provided by that same subsection. However, Sprint and Consumers Energy are bound by subsection (b) only for the 21st through 30th days following Debtor's October 21, 2005 petition. Debtor must look to subsection (c) if it wishes to extend the subsection (a) injunction against Consumers Energy and Sprint beyond the 30th day.

I will issue a separate order consistent with this opinion.

---

**5.** On the other hand, if Congress did not intend to distinguish between the services subject to subsection (b) and the services subject to subsection (c), then it is appropriate to consider whether Section 366 generally excludes from its scope services provided by a utility that are used other than by the trustee or debtor as a consumer. However, as already explained, that issue is moot in this instance because it is Debtor itself who is seeking relief under Section 366.