In re **CRYSTAL CATHEDRAL MINISTRIES, a California nonprofit corporation, Debtor.**

**Southern California Edison Company, Appellant,**

**Crystal Cathedral Ministries, Appellee.**

No. SACV 11–00371–CJC.

United States District Court, C.D. California, Southern Division.

June 30, 2011.

Douglas P. Ditonto, Rosemead, CA, Patricia A. Cirucci, Rosemead, CA, for Appellant.

Kavita Gupta, Newport Beach, CA, Marc J. Winthrop, Newport Beach, CA, for Appellee.

## ORDER AFFIRMING BANKRUPTCY COURT'S FEBRUARY 17, 2011 ORDER

CORMAC J. CARNEY, District Judge.

### INTRODUCTION

Appellant Southern California Edison Company ("SCE") contends that the Bankruptcy Court's February 17, 2011 Order granting Appellee–Debtor Crystal Cathedral Ministries' ("Crystal Cathedral") motion for a determination that Crystal Cathedral had provided SCE with adequate assurance of payment under 11 U.S.C. § 366 was erroneous and should be reversed. For the reasons explained below, the Court AFFIRMS the Bankruptcy Court's February 17, 2011 Order.

### BACKGROUND

Crystal Cathedral filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code on October 18, 2010. Excerpts of Record on Appeal ("ER") 101. Crystal Cathedral had timely made payments to SCE before filing its petition and has continued to timely pay its postpetition bills with the exception of a payment on October 29, 2010 that was one day late. ER 131, 132. The day after filing its petition, Crystal Cathedral filed an emergency motion for an order (a) prohibiting utility providers from altering, refusing, or discontinuing service, (b) deeming utilities adequately assured of future performance, and (c) establishing procedures for determining adequate assurance of payment under § 366 of the Bankruptcy Code (the "Utility Motion"). *See* ER 97–108. In the Utility Motion, Crystal Cathedral proposed to deposit $52,500 "into an interest-bearing, newly created segregated account" (the "Utility Account") to provide to its utility providers that were "not currently holding a deposit" an "adequate assurance of payment of post-petition date services." ER 102. Crystal Cathedral's motion requested that the Bankruptcy Court find this amount to be sufficient to constitute adequate assurance of payment that would prevent its utility providers from discontinuing utility service. ER 106. Crystal Cathedral further sought approval of a procedure by which its utility providers could request that Crystal Cathedral deposit additional moneys into the Utility Account. ER 102–03. More specifically, Crystal Cathedral suggested that utility providers could submit written requests for additional assurance of payment to Crystal Cathedral. ER 102. If Crystal Cathedral agreed that a request was reasonable, it would deposit the requested funds. ER 103. If Crystal Cathedral opposed the request, it would set a hearing to have the Bankruptcy Court resolve whether additional funds were needed to provide an adequate assurance of payment going forward. ER 103. SCE did not specifically oppose the Utility Motion, and

the Bankruptcy Court granted the motion on October 20, 2010. ER 113–16.

On November 10, 2010, SCE wrote Crystal Cathedral requesting that Crystal Cathedral provide SCE with a cash deposit in the amount of $160,930 to provide adequate assurance of payment. ER 174–75. SCE asserted that this amount was reasonable in light of Crystal Cathedral's past bills and because it would take approximately 73–78 days to discontinue service if Crystal Cathedral failed to pay its bills. ER 175. SCE also notified Crystal Cathedral that it disagreed with portions of the Bankruptcy Court's Utility Order. ER 174–75.

Crystal Cathedral responded by offering to increase the funds in the Utility Account by $29,960. ER 131. SCE rejected this proposal but offered to accept a $80,460 deposit so long as it was deposited with SCE for its benefit. ER 132, 190. Crystal Cathedral would not agree to this request. Crystal Cathedral did, however, deposit an additional $27,960 into the Utility Account so that it held $80,460. ER 132.

On January 14, 2011, consistent with the Utility Order, Crystal Cathedral filed a motion for an order determining that the Utility Account provided adequate assurance of payment to SCE. ER 121–30. SCE opposed the motion on several grounds now raised on appeal and contended that the Bankruptcy Court should require Crystal Cathedral to provide SCE with a $80,460 deposit to provide adequate assurance of payment. ER 188. A hearing on the motion was held on February 9, 2011. ER 213. The Bankruptcy Court ultimately held that the Utility Account already provided SCE and other utility providers with adequate assurance of payment "under Section 366 of the United States Bankruptcy Code." ER 213 (Bankruptcy Court's February 17, 2011 Order).

SCE filed a Notice of Appeal on March 2, 2011.

**ANALYSIS**

A district court reviews a bankruptcy court's legal conclusions *de novo* and its factual findings for clear error. *Neilson v. United States (In re Olshan),* 356 F.3d 1078, 1083 (9th Cir.2004).

11 U.S.C. § 366 limits a utility's authority to "alter, refuse, or discontinue service to, or discriminate against" a debtor that has filed for bankruptcy except as permitted by subsections (b) and (c) of the statute. 11 U.S.C. § 366(a). The statute further provides that:

(b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

(c)(1)(A) For the purposes of this subsection, the term 'assurance of payment' means—

(i) a cash deposit;

(ii) a letter of credit;

(iii) a certificate of deposit;

(iv) a surety bond;

(v) a prepayment of utility consumption; or

(vi) another form of security that is mutually agreed on between the utility and the debtor or the trustee.

(B) For purposes of this subsection an administrative expense priority shall not constitute an assurance of payment.

(2) Subject to paragraphs (3) and (4), with respect to a case filed under chap-

ter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30–day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility.

(3)(A) On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).

(B) In making a determination under this paragraph whether an assurance of payment is adequate, the court may not consider—

> (i) the absence of security before the date of the filing of the petition;
>
> (ii) the payment by the debtor of charges for utility service in a timely manner before the date of the filing of the petition; or
>
> (iii) the availability of an administrative expense priority.

(4) Notwithstanding any other provision of law, with respect to a case subject to this subsection, a utility may recover or set off against a security deposit provided to the utility by the debtor before the date of the filing of the petition without notice or order of the court.

11 U.S.C.A. § 366(b)–(c). "The legislative history of Section 366 establishes that the enactment of this section was to protect debtors from a cut-off of service by a utility because of the filing of the petition." *In re Syroco Inc.*, 374 B.R. 60, 61 (Bankr. D.P.R.2007). Subsection (c) was added by the Bankruptcy Abuse Prevention and Protection Act of 2005. *In re Lucre, Inc.*, 333 B.R. 151, 153 (Bankr.W.D.Mich.2005). This section, rather than § 366(b), governs in cases such as this one involving a chapter 11 bankruptcy. *See* 3 Collier on Bankruptcy ¶¶ 366.03[1], 366.03[2] (Alan N.

Resnick & Henry J. Sommer eds., 16th ed. 2011); *cf. In re Astle*, 338 B.R. 855, 858–60 (Bankr.D.Idaho 2006) (concluding that § 366(c) did not apply in a chapter 12 bankruptcy case). The addition of § 366(c) "created new limits on the methods by which a chapter 11 debtor may provide adequate assurance [of payment] and gave utilities greater rights in chapter 11 cases." 3 Collier on Bankruptcy, *supra*, ¶ 366.1.LH[2].

The Court initially observes that SCE and Crystal Cathedral have fundamentally different interpretations of § 366(c) and disagree as to both when courts properly become involved in debtor-utility disputes and what role courts may play. SCE places primary emphasis on § 366(c)(2), which permits a utility to discontinue utility service in some cases if it has not "receive[d] from the debtor or trustee adequate assurance of payment ... that is satisfactory to the utility" within 30 days from the debtor filing its petition. According to SCE, a chapter 11 debtor seeking to trigger the statutory protections against loss of service is obligated to ask the utility what form (of those enumerated in § 366(c)(1)(A)) and amount of assurance of payment it finds adequate and satisfactory. To obtain the statutory protections, the debtor must then provide that requested assurance of payment, but the debtor may seek relief from the bankruptcy court after-the-fact by requesting an order modifying the amount—but not the form—of the adequate assurance of payment the utility has requested.

This interpretation is not without support. For example, in *In re Viking Offshore (USA) Inc.*, two utility companies had security deposits from the chapter 11 debtor. *See* No. 08–31219–H3–11, 2008 WL 782449, at *1 (Bankr.S.D.Tex. Mar. 20, 2008). The debtors sought a determination that these deposits constituted ade-

quate assurance of payment as to these two utilities. *Id.* The court refused to provide such a ruling, reasoning that "[t]he relief requested by the [d]ebtors would reverse the burden, by making an advance determination that the proposed assurance was adequate." *Id.* at *3. The court suggested that the proper procedure was that the utility companies could first insist on a payment that would be "satisfactory" to them, and those demands would be "subject to a determination by the court" apparently made following the utility companies' receipt of the demanded amounts. *Id.* at *3; *see also In re Lucre*, 333 B.R. at 154 ("[T]he right to have the adequate assurance of payment modified by the court" pursuant to § 366(c)(3) "arises only after the adequate assurance payment has been agreed upon by the parties. In other words, the trustee or debtor in possession has no recourse to modify the adequate assurance payment the utility is demanding until the trustee or debtor in possession actually accepts what the utility proposes."). One court has implied that this utility-friendly interpretation might be tempered by the imposition of an obligation on utility providers to negotiate and exercise their § 366(c) rights in good faith. *See In re Lucre*, 333 B.R. at 154.

In contrast, Crystal Cathedral asserts that § 366(c) provides a debtor that has filed a bankruptcy petition 30 days to either (1) reach agreements with its utility providers pursuant to § 366(c)(2) whereby they "receive . . . adequate assurance of payment . . . satisfactory to the utilit[ies]," or (2) obtain an order from the bankruptcy court pursuant to § 366(c)(3) establishing what will constitute adequate assurance of payment. In short, Crystal Cathedral contends that it was proper for it to establish the Utility Account and seek a ruling from the bankruptcy court that it constituted adequate assurance of payment even though Crystal Cathedral had not provided

security to SCE in the form and amount that SCE preferred.

There is also support for this interpretation of § 366. In *In re Beach House Property, LLC*, the bankruptcy court expressly disagreed with *In re Lucre* and similar cases. *See* No. 08–11761–BKC–RAM, 2008 WL 961498, at *1 (Bankr. S.D.Fla. Apr. 8, 2008). It held that a bankruptcy court may determine the form and amount of adequate assurance of payment even prior to the debtor paying "whatever amount the utility has demanded" when the debtor and utility provider cannot agree under § 366(c)(2), but the adequate assurance of payment must take one of the forms enumerated in § 366(c)(1)(A). *Id.; see also id.* (arguing requiring debtors to meet utility providers' demands prior to seeking court intervention would promote absurd results); 3 Collier on Bankruptcy, *supra,* ¶¶ 366.03[2] (asserting that § 366(c)(2) "essentially requir[es], in the first instance, that the debtor pay what the utility demands, *unless the court orders otherwise* " (emphasis added)), 366.06. Similarly, the court in *Bedford Town Condominium v. Washington Suburban Sanitary Commission (In re Bedford Town Condominium)* held that "neither § 366(c)(2) nor (3)(A) require a debtor to pay the adequate assurance demanded by a utility before the Court can modify that amount" pursuant to § 366(c)(3). 427 B.R. 380, 383 (Bankr. D.Md.2010); *see also id.* (emphasizing that § 366(c)(2) is "subject to" § 366(c)(3)). The court in *In re Circuit City Stores, Inc.* further observed that the contrary interpretation barring court intervention would be "unworkable" and "could lead to absurd results," especially where (1) utility providers fail to respond to debtors' offers of adequate assurance or (2) chapter 11 debtors have such a large number of utility accounts and providers across the coun-

try that it is impossible for them to negotiate and distribute adequate assurance of payment "satisfactory" to each individual provider within § 366(c)(2)'s 30–day time window. No. 08–35653, 2009 WL 484553, at \*3 (Bankr.E.D.Va. Jan. 14, 2009).

■ In the absence of controlling authority, the Court finds more persuasive the cases permitting court intervention prior to a utility provider receiving what it demands. "In addition to giving effect to the plain language of the statute," this interpretation best balances the protections afforded debtors and utility providers by "provid[ing] substantial protection to a utility while at the same time providing an avenue of relief for debtors, who believe a utility's request is unreasonable or unworkable." *In re Bedford Town Condo.*, 427 B.R. at 384; *see also id.* at 386 (explaining that the court's order regarding adequate assurance of payment was issued "without prejudice to any party's right to seek modification in the event circumstances dictate[d]" subsequent modification would be appropriate). This conclusion is the starting point for the Court's resolution of SCE's specific legal challenges to the Bankruptcy Court's February 17, 2011 Order.

■ On appeal, SCE contends that the Bankruptcy Court's February 17, 2011 Order misinterpreted § 366 and is premised the following related legal errors: (1) the Utility Account is not a "cash deposit" or another form of adequate assurance of payment enumerated in § 366(c)(1)(A), (2) SCE has not received adequate assurance of payment pursuant to § 366(c)(2) because the Utility Account is maintained by Crystal Cathedral for the benefit of all of

its utilities, (3) the Bankruptcy Court exceeded its authority in "establishing" the form of adequate assurance of payment rather than simply modifying the amount of the form of payment—a cash deposit held by SCE—SCE requested, and (4) the Bankruptcy Court failed to properly determine the amount of adequate assurance of payment pursuant to § 366(c)(3) in response to SCE requesting a cash deposit of $80,460. The Court addresses each challenge below.

■ The Utility Account is a segregated bank account that Crystal Cathedral created and deposited cash into for the benefit of its utility providers.[1] It is undisputed that a "cash deposit" is one of the forms of assurance of payment enumerated in § 366(c)(1)(A). The statute does not, however, define the term "cash deposit." The Bankruptcy Court found the Utility Account to be a "cash deposit" within the plain meaning of § 366(c)(1)(A), reasoning that it consists of cash "deposited with a bank [in an account] that's segregated for the utilities." *See* App. B, at 5:15–16 (Transcript of February 9, 2011 hearing). The Court cannot find that the Bankruptcy Court's determination that the segregated bank account is a "cash deposit" runs afoul of the plain meaning of the statutory language. SCE contends that the Utility Account is not a "deposit" because it is held by Crystal Cathedral rather than SCE or another utility provider and SCE lacks direct authority to draw down the account in the event that Crystal Cathedral fails to pay its bills. The Bankruptcy Court rejected this argument. *See id.* at 5:17–19 ("[T]he cash deposit doesn't say it has to be with the utility. Why can't it be in a segregated account, which it is?"). In

---

1. SCE has not challenged Crystal Cathedral's assertion that the account is insulated from

possible competing claims of creditors that are not utility providers.

some cases, a utility provider may persuasively argue that it needs to control the account containing the cash deposit. But whether the account may be held by the debtor or instead needs to be held by a utility provider is an issue best resolved when the bankruptcy court determines whether the proposed assurance of payment is *adequate.* Accordingly, narrowing the definition of "deposit" as SCE requests is unwarranted.

▇▇▇ SCE's challenge that § 366(c)(2)'s language entitles a utility provider to "receive" adequate assurance of payment from the debtor is closely related to SCE's "deposit" argument. SCE asserts that it has not received adequate assurance of payment because Crystal Cathedral controls the Utility Account. *See* Reply at 6 (SCE contending it "has not received possession of anything"). The language of the statute makes clear, however, that SCE is entitled to receive adequate assurance of payment, which is not to be confused with actual payment or an absolute guarantee of payment. *See Steinebach v. Tucson Electric Power Co. (In re Steinebach),* 303 B.R. 634, 641 (Bankr.D.Ariz.2004) (explaining that bankruptcy courts are "'not required to give a utility company the equivalent of a guarantee of payment, but must only determine that the utility is not subject to any unreasonable risk of non-payment for postpetition services.'" (quoting *In re Adelphia Bus. Solutions, Inc.,* 280 B.R. 63, 80 (Bankr.S.D.N.Y.2002))). Here, the Bankruptcy Court found that Crystal Cathedral's creation of the Utility Account

caused SCE to receive adequate assurance of payment because the existence of the account satisfactorily reduced the risk that SCE and other utility providers would provide postpetition services without compensation. It considered several factors including Crystal Cathedral's postpetition finances, the burden an additional deposit with SCE would impose on the reorganizing Crystal Cathedral, the fact that the Utility Account was created specifically to protect Crystal Cathedral's utility providers, and the $80,460 account balance. Accordingly, its conclusion that SCE had received adequate assurance of payment was a finding of fact and is entitled to deference. This finding was based on an examination of the record and was not clearly erroneous.[2]

▇▇▇ SCE's contention that the Bankruptcy Court exceeded its authority in "establishing" the form of adequate assurance of payment rather than simply modifying the amount of the $80,460 cash deposit SCE requested also fails. The Court does not agree with SCE's characterization that the Bankruptcy Court established a form of adequate assurance of payment different than the form requested by SCE. It is undisputed that SCE requested a cash deposit that it believed it was entitled to receive and hold for its own benefit in case Crystal Cathedral failed to pay for postpetition services. The Bankruptcy Court found that the Utility Account was a cash deposit within the meaning of the statute, and the fact that Crystal Cathedral controlled it rather than SCE did not persuade the Bankruptcy Court to change its

---

**2.** The Court notes that § 366(c)(3)(B) instructs bankruptcy courts not to consider "the absence of security before the date of the filing of the petition," the debtor's timely payment for utility services prior to filing its petition, or "the availability of an administra-

tive expense priority" when determining whether an assurance of payment is adequate. 11 U.S.C. § 366(c)(3)(B)(i)–(iii). To the extent that the Bankruptcy Court considered one or more of these factors, its error was harmless on this record.

conclusion. Thus Crystal Cathedral's cash deposit corresponded to the form of adequate assurance of payment that SCE requested. Even assuming the Bankruptcy Court established the form of the adequate assurance of payment, as SCE contends, there is authority for the proposition that § 366(c) empowers bankruptcy courts to establish the form of adequate assurance in appropriate cases. *See In re Beach House Property, LLC,* 2008 WL 961498, at *1 (finding that a bankruptcy court may determine the form and amount of adequate assurance of payment where the debtor and utility provider do not reach agreement under § 366(c)(2) so long as the adequate assurance of payment is one of the types enumerated in § 366(c)(1)(A)). This authority might be crucial in cases where the utility provider stubbornly insists on one specific form of adequate assurance of payment, such as § 366(c)(1)(A)(v)'s "prepayment of utility consumption," that is particularly difficult or impossible for the debtor to satisfy despite the debtor having the capability to provide adequate assurance of payment in one of the other enumerated forms.

Finally, SCE contends that the Bankruptcy Court, when confronted with SCE's demand that it receive a cash deposit of $80,460 from Crystal Cathedral, failed to determine the amount of deposit required to constitute an adequate assurance of payment. According to SCE, this was a violation of the Bankruptcy Court's obligations pursuant to § 366(c)(3), which permits the court to modify the amount of an assurance of payment to ensure that it is or remains adequate. This argument necessarily relies on SCE's assertion that it had the authority to prescribe the exact form the adequate assurance of payment would take—a cash account held by SCE—and the Bankruptcy Court was bound to operate within the confines of SCE's election. In sum, SCE contends that the Bankruptcy Court failed to make a required decision as to what amount of money up to $80,460 Crystal Cathedral had to deposit in SCE's account to provide an adequate assurance of payment. This contention is without merit. The Court has already rejected SCE's argument that the Utility Account was not a "cash deposit" because it was not held by SCE or, in the alternative, the Bankruptcy Court lacked the authority to choose one of § 366(c)(1)(A)'s forms in light of the parties' failure to resolve their dispute. Having found that the $80,460 contained in the Utility Account was a "cash deposit," the Bankruptcy Court made a factual finding that the Utility Account provided adequate assurance of payment for SCE, even though it was not held by SCE, and rejected SCE's request for an additional $80,460 deposit in an SCE account. Having made that determination, the Court had no further obligation to opine as to what amount up to $80,460 Crystal Cathedral could have given directly to SCE to provide SCE with an adequate assurance of payment by a means other than the Utility Account.

**CONCLUSION**

For the foregoing reasons, the Bankruptcy Court's February 17, 2011 Order is AFFIRMED.